**PELUSO LAW GROUP, PC**
Larry A. Peluso (SBN 281380)
14435-C Big Basin Way #289
Saratoga, California 95070
pelusolaw@gmail.com
949-395-0092 (direct)  310-593-1821 (office)
*Attorneys for Plaintiff and the Plaintiff Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO VILLASEÑOR, on behalf of himself and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>LYFT, INC., a corporation; Doe 1-5,<br><br>          Defendants. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>1.  **Unfair Competition in Violation of California Business and Professions Code §17200 et seq.**<br>2.  **Unjust Enrichment**<br>3.  **Fraudulent Inducement to Employment and to Contract, and Intentional and Negligent Misrepresentation**<br>4.  **Constructive Trust**<br><br><br>**JURY TRIAL DEMANDED** |

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

Plaintiff Fernando Villaseñor, by and through his counsel, on information and belief, alleges the following, on behalf of himself and others similarly situated.

## INTRODUCTION

1.      This is a civil class action brought by one Lyft driver on behalf of all Lyft drivers, seeking disgorgement of unjust enrichment obtained by Lyft, Inc. without legal entitlement, through deceptive business practices and fraud.

## PARTIES

2.      PLAINTIFF FERNANDO VILLASEÑOR is a resident of Mission Viejo, Orange County, California.  Villaseñor has been a Lyft Driver since October 2016, operating in California.

3.      DEFENDANT LYFT, INC. is a Delaware corporation with its corporate headquarters and primary place of business in San Francisco, California. Lyft operates in at least 30 other states of the United States of America.

4.      Plaintiff alleges on information and belief that: (1) each Defendant acted in all matters relevant to this action as the agent of the other Defendant and carried out joint business plans and operations; and (2) the acts and omissions of each Defendant are legally attributable to the other Defendant.

## JURISDICTION AND VENUE

### Subject Matter Jurisdiction

5.      This Court has subject matter jurisdiction over this action under the Fairness in Class Actions Act of 2005 ("CAFA"), 28 U.S.C. Section 1332(d), because the aggregate amount in controversy exceeds $5,000,000, the parties are minimally diverse; this is not a local controversy.  28 U.S.C. §1332(d)(4)(A).

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

6.     Plaintiff Fernando Villaseñor also is a resident and citizen of the State of California, but the putative plaintiff class is composed of approximately 1,400,000 members who reside in at least 30 states of the United States of America and drive for Lyft in those states.

**Personal Jurisdiction and Venue**

7.     The United States District Court for the Northern District of California has general personal jurisdiction over Defendant Lyft, Inc. because Lyft's headquarters and principal place of business is located in San Francisco, California.

8.     Having general jurisdiction over Lyft, Inc., this court has jurisdiction over Lyft as to claims of Lyft drivers who reside anywhere and who drive for Lyft anywhere.

**GENERAL ALLEGATIONS**

9.     "Lyft" is a familiar smartphone-app driven taxi service.  While characterizing its drivers as independent contractors, Lyft exercises enormous control over its drivers' 'independent' businesses, such as instantly terminating a driver's 'business' at the drop of a hat.

10.    Lyft's smartphone app and business model are highly similar to the smartphone app and business model of the earlier and highly-successful 'ride-sharing' service, Uber.

11.    Lyft competes with Uber in the same market; and each of these two leading "transportation network companies" must compete against taxi service.

12.    Since its 2012 launch, Lyft has enjoyed astounding growth, achieving a market value of $11 billion in less than 5 years' time.  Lyft's growth rate is remarkable, particularly in light of Uber's 3-year head-start, viral growth rate, and competitive pricing, designed to undercut taxi prices in all but the most extreme markets, by an average of 30%.

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

13.     Uber fares are so competitive with taxi fares that, in 2018, competition from Uber had driven the free-market resale price of a New York City Taxi Medallion (license) from a high of well over $1,000,000 in 2013 to a little better than $150,000 in 2018.

14.     In order to gain market entry against Lyft and compete with taxis, like Uber, Lyft regularly set its standard prices to average about 30% below taxi prices.

15.     As the new company in town, in order to quickly increase its market share, Lyft had to attract and retain drivers, including drivers who drove for Uber or had the option of driving for Uber.  To attract its rapidly-growing staff, which has swollen to nearly 1,000,000 drivers today, Lyft advertising conveys the impression of being driver-friendly and of offering drivers a better deal.  And, to a degree, this is true.  Lyft was the first major app-driven ride-sharing service to allow drivers to accept and retain tips.  Lyft advertised this over the Internet and through email to prospective drivers.

16.     However, in order to attract drivers while producing extra to fuel its rapid growth, advertised more than it delivered, resorting to what can only be characterized as deceptive business acts and practices.  For example, Plaintiff noticed that he first made about $1800 per week.  But, after the first two weeks his referrals from Lyft resulted in shorter, lower-profit ride referrals which only generated $1000 to $1200 per week gross (less gasoline costs and 100,000 mile-per-year car expenses).  Lyft also gave new drivers an extra hour of prime time pricing in order to boost the new driver's impression of earning more than he would.  Plaintiff also lost income when Lyft referred him a scheduled, high-profit airport ride but, after he had driven most of the way from Mission Viejo to LAX, Lyft suddenly withdrew the ride and referred the ride to a driver closer to the arriving passenger's LAX location, leaving Plaintiff to drive a 2 ½ hour, 80 miles round-trip without compensation.

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

CLASS ACTION COMPLAINT

17.     Most particularly relevant to the present suit, Lyft attracted Plaintiff, as it attracts all drivers, by advertising, and in its Terms of Service agreement promising, drivers 80% of the fare, when in fact Lyft paid the driver far less; in one typical example from February 1, 2018, paying Plaintiff only 57% of the fare.

18.     Until April 9, 2018, Lyft repeated the deceptive practice it had used to attract drivers in its smartphone app display for every ride.  In one typical example, the Lyft app offered the passenger a ride priced at over $7 while offering Plaintiff, the driver, the same ride at a fare of only $5.  The app displayed to the driver a Lyft "commission" of $1, leaving the driver $4.  But to the passenger, the app displays a $7 ride.  Thus Lyft retained an additional $2 of the fare while continuing to misrepresent to the driver that he was receiving 80% of the fare.

19.     On information and belief, Lyft will assert that the 20% constituted its "commission" under the contract with the driver, and that the additional charge to the passenger constituted its "service fee" under a different contract.  The fact is that Lyft deceives the driver as to the amount of the fare and retains funds earned by the driver.  This is a deceptive business practice.  Until April 9, 2018, Lyft did not disclose to the driver that his 'independent business' had generated the higher fare than he knew.

20.     Lyft may argue that there has been no misrepresentation and no fraud -- that its additional service fees are under a separate contract with the rider -- that the service fee was a charge to the rider only, under a rider contract that is entirely separate and distinct from its contract with the driver -- and that this in no way decreases the driver's net earnings.   This characterization is disingenuous and false because Lyft knows very well that its fares are limited in relation to taxi fares. Standard fares were set at a level that would avoid exceeding taxi fares in all but the most extreme location (Manhattan, where average traffic speed is very slow and taxi fares are lower).

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

CLASS ACTION COMPLAINT

21.     Recently, on April 9, 2018, in order to avoid further liability from suits like this, Lyft raised its fares and eliminated its commission, providing increased driver income, and halted its practice of misrepresenting to the driver the fare amount and its practice of misrepresenting that it took only 20% of the fare. Until April 9, although Lyft and Uber raise fares during "premium" or "surge" times of day and charge a premium for luxury cars, both companies set their fares to be lower than taxi fares – on average by about 30%.

22.     Lyft's deceptive business acts and practices have unjustly enriched Lyft, Inc. in California at the expense of Plaintiff and its other drivers in California (the California Subclass) and across the Nation (the entire plaintiff Class).

23.     Lyft's deceptive business acts and practices also violate California's Unfair Competition Law and constitute fraudulent inducement to employment and to contract.

24.     Lyft has generated most of its wealth with the use of the wrongfully-obtained funds.  The additional funds Lyft has obtained by deceiving its drivers has fueled Lyft's business expansion and built the considerable present value of Lyft, Inc.

25.     Those savings translate into higher net revenues which attract investment capital, attract additional and better technical and marketing staff, and provide for better advertising, skyrocketing Lyft's market value to $11 billion, in less than 5 years.

26.     In fact, upon information and belief, discovery and trial are likely to show that the extra funds Lyft has obtained by its deceptive practices constitute the entire value of the Lyft company.  The Lyft, Inc. stock is now valued at $11 billion while Lyft lost approximately $250 million in 2017 on gross revenue of about $750,000 million.  Without the additional approximately 23% of the fare Lyft obtains by deception (doubling Lyft's share of the fare from 20% to 43%), Lyft's stock would be worth nothing, or merely a fraction of its present value.

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

CLASS ACTION COMPLAINT

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

27.    In this technical era, the sleight-of-hand is accomplished by computer science.  When a customer requests a ride, the Lyft computer checks its database and determines fare by reference to the Lyft database of average competing taxi fares, whether computed by time, distance, or a combination of the two; then adjusts its price accordingly, which results in a fare averaging 30% less than the average predicted taxi fare.  In contrast, the human driver does not instantly know the corresponding taxi fare.  Thus, the human driver does not know that Lyft is taking 43% of the fare, not 20%.

28.    As Lyft fares average 30% less than taxi fares, the driver expects to receive an amount that turns out to be about **56%** of the comparable taxi fare (80% of the Lyft fare, which is itself about 70% of the comparable taxi fare).  But, in the typical example stated above, the driver receives only about **40%** of the comparable taxi fare (an average of about 57% of the Lyft fare, which itself is about 70% of the taxi rate).  Thus the drivers were until April 9, 2018, being shorted about 16% of the share an objective driver would reasonably expect to receive.

29.    Lyft fares are limited by taxi fares and an average of 30% below taxi fares.  Thus, the lower percentage of the fare represents more than a reference figure; it constituted a concrete, actual loss in income to the driver, which Lyft retained.  Lyft invested those funds in its own growth and thereby used the funds obtained by deception to build its company infrastructure and generate its high stock price.  The drivers are entitled to the share of the company built with their promised income which Lyft wrongfully retained.

30.    Lyft's statements to drivers are deceptive because they tend to deceive the prospective customer who may buy their service; therefore, at the very least, these deceptive acts and practices violate the California Unfair Competition Law, under both the unfair business practice prong and under the fraudulent business

CLASS ACTION COMPLAINT

practice prong, establishing a basis for simple restitution of the funds retained by Lyft without legal entitlement.

31.    Moreover, as drivers do rely on these misrepresentations, these practices constitution intentional or negligent misrepresentation under California law, providing a basis for fraud damages.

32.    Lyft drivers are entitled to disgorgement of the unjust enrichment Lyft has obtained unlawfully at the expense of its drivers, including both simple restitution and the increased value of Lyft's stock attributable to the extra approximately 23% of the fare revenue that belongs to the drivers but Lyft has retained.  The drivers are entitled to the investment value of those funds as an interest in Lyft, Inc., as stock or stock options in Lyft, Inc., because the funds were used to increase the stock value.

33.    In the alternative, Lyft drivers are entitled to damages for misrepresentation or fraudulent inducement; at the very least, the drivers are entitled to simple restitution.

34.    Lyft and Uber claim that the drivers are independent business people, and that the company merely provides services to the driver and to its customer. This characterization is highly-questionable due to the degree of control these companies exercise over the driver and over the driver's interactions and relations with customers.

35.    Drivers have no control over Lyft's practices because Lyft sets the fares, refers the rides, hires and fires the riders at will, and otherwise exercises such extensive control over the drivers' work and business that the relationship can only be characterized as that of employer and employee.  Under today's *Dynamex* test, Lyft drivers cannot be considered independent contractors because Lyft cannot establish any or all elements of the "ABC" test now adopted by California to determine whether California wage orders apply to the protect the worker.

36.    The ABC test requires that all three of the following factors are met:

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

CLASS ACTION COMPLAINT

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

(A) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact;

(B) that the worker performs work that is outside the usual course of the hiring entity's business; and

(C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity (in other words, the driver would be transporting passengers for a living even without the use of the Lyft platform.

*Dynamex Operations West, Inc. v. Superior Court,* #S222732 (Cal. April 30, 2018) (unanimous opinion affirming unpublished decision of Court of Appeals, review having been granted as reported in 230 Cal.App.4th 718).

37.     Lyft cannot establish element B; element C is not true for almost all drivers; and Lyft cannot establish all facets of element A of the ABC test.

38.     The ABC test is congruent with the respondeat superior test for vicarious tort liability, which determines worker status for the purpose of determining the applicability of the NLRA and its derivative rules for the protection of the worker. Under each of these tests, Lyft drivers are employees.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff commences this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, including Rule 23(b)(3), on behalf of the following class:

*All persons residing in the United States of America who entered into contracts with Lyft, Inc. from the time of its inception until April 8, 2018, to provide transportation services to customers of Lyft, Inc. in the United States in exchange for 75% or 80% of the fare set by Lyft, Inc., and who did*

CLASS ACTION COMPLAINT

*perform such services, resulting in charges from Lyft, Inc. to the customer (the rider), and the collection of fare money from the customer by Lyft, Inc.*

40. The Class contains a subclass, the "California Subclass," defined below.

41. Plaintiff re-alleges and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs.

42. Subject to additional information obtained through further investigation and discovery the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Excluded from the Class are Defendant and their affiliates, parents, subsidiaries, employees, offers, agents, and directors in their governmental capacities, any judicial officer presiding over this matter and the members of their immediate families and judicial staff; and class counsel.

43. **Ascertainable Class**: The Class members and Subclass members are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are known to Defendant who frequently communicates the them by electronic mail (email). The number and identify of the Class members are precisely determinable from the records of Defendant.

44. **Numerosity**: The proposed Class has over 700,000 members and is therefore so numerous that joinder of all members is impracticable. The proposed California Subclass has over 100,000 members and is therefore also so numerous that joinder of all members is impracticable. The disposition of their claims as a class will benefit the parties and the Court. The precise number of such persons is unknown because the data required to calculate that number is presently within the sole possession custody and control of Defendant.

45. **Commonality:** There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members, including, but not limited to, the following:

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

CLASS ACTION COMPLAINT

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

    a. Whether Lyft obtained funds from the drivers' labor without legal entitlement such that the drivers are entitled to restitution.

    b. Whether the funds obtained by Lyft from the drivers' labor without legal entitlement were used by Lyft to increase Lyft's company value as the value of the common and preferred stock of Lyft, Inc. such that the drivers are entitled to disgorgement of the increased value of Lyft stock attributable to the funds obtained by Lyft, Inc. without legal entitlement or, in the alternative, to a ownership of a portion of Lyft, Inc. stock.

    c. Whether Lyft obtained money from the drivers by fraudulent inducement to employment, by fraudulent inducement to contract, by intentional misrepresentation, or by negligent misrepresentation.

    d. Whether Lyft employed unfair, fraudulent, or unlawful business acts and practices that would be deceptive to consumers and to Plaintiffs and Class members, and to its potential and existing employees and drivers, and by such practices obtained additional funds from the drivers' labor.

    e. The proper measure of damages and the proper measure of restitution or disgorgement of unjust enrichment recoverable by Class members.

    f. The increase in the value of Lyft common stock attributable to Lyft's reinvestment of the funds rightfully belonging to Plaintiff and Class members.

    g. Whether Plaintiff and Class members are entitled to ownership of Lyft common stock in an amount attributable to the increase in value produced by the retention by Lyft or re-investment by Lyft of funds rightfully belonging to Plaintiff and Class members.

    h. Whether California UCL and fraud law apply to transactions outside of California, and whether principles of Equity, unjust enrichment, and Restitution apply nationwide.

CLASS ACTION COMPLAINT

i.    Additional common questions of law and fact as developed during the discovery phase of this litigation.

46.    **Typicality:**  The claims of the individually named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class, in that Plaintiffs and the other members of the Class were subjected to the same uniform practices of the Defendant and because Plaintiffs have suffered the injuries described in this Complaint.

47.    **Adequacy of Representation**:  Plaintiff can fairly and adequately protect the interests of the Class and has no interests adverse to the Class.  At all relevant times, Plaintiff and the Class members are and have been similarly situated and have been subject to the same contracts and contract terms.

48.    **Predominance and Superiority**:  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

j.    **Predominance:**  Defendants' actions described herein are generally applicable to the Class as a whole and, as a result, the questions of law and fact common to the Class predominate over any questions affecting only individual Class members.

k.    **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, Class members will continue to suffer losses and Defendants' misconduct will proceed without remedy.

i.    Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

1  factual issues involved, individualized litigation would significantly increase the

2  delay and expense to all parties and to the Court.  Individualized litigation would

3  also create the potential for inconsistent or contradictory rulings.  By contrast, a

4  class action presents far fewer management difficulties, allows claims to be heard

5  which might otherwise go unheard because of the relative expense of bringing

6  individual lawsuits, and provides the benefits of adjudication, economies of scale

7  and comprehensive supervision by a single court.

8            ii.    Finally, Plaintiffs know of no difficulty that will be

9  encountered in the management of this litigation which would preclude its

10  maintenance as a class action.

11       49.    The representative and his chosen attorneys are familiar with the

12  subject matter of the lawsuit and have full knowledge of the allegations contained

13  in this complaint to be able to assist in its prosecution.  In addition, the

14  representative's attorneys are competent in the relevant areas of the law and have

15  sufficient experience to vigorously represent the Class.  Furthermore, the resources

16  available to counsel ensure that the litigation will not be hampered by a lack of

17  financial capacity.  Plaintiff's attorneys have sufficient financial resources and are

18  willing to absorb the costs of the litigation.

19

20                  **SUBCLASS ACTION ALLEGATIONS**

21       50.    The Class contains a subclass, the "California Subclass," defined as

22  follows:

23

24      *All Class members who, under contract with Lyft, Inc. provided*
         *transportation services to customers of Lyft, Inc. primarily in California.*

25

26       51.    Plaintiff re-alleges and incorporates herein by reference each and

27  every allegation in the preceding and subsequent paragraphs.  The incorporation

28  specifically includes the above Class Action Allegations which cover the

nationwide Class of which the California Class members are a Subclass and make the same class-related allegations.

52.     **Numerosity**:  The proposed California Subclass has over 100,000 members and is therefore so numerous that joinder of all members is impracticable. The disposition of their claims as a class will benefit the parties and the Court.  The precise number of such persons is unknown because the data required to calculate that number is presently within the sole possession, custody and control of Defendant.

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

## CAUSES OF ACTION
## COUNT 1
## UNFAIR COMPETITION
### (California Business and Professions Code §§ 17200 et seq.)
### By Plaintiff and the California Subclass Against Defendants

53.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs here, as though fully set forth in this First Cause of Action

54.     This claim is based upon sections 17203 and 17204 of the California Business and Professions Code to obtain restitution, disgorgement, declaratory and injunctive relief, and all other remedies available for violations of  section 17200 of the Business and Professions Code, the California Unfair Competition Act.

55.     Plaintiffs and Class members are "persons" within the meaning of California Business and Professions Code section 17201.

56.     The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.

57.     A business act or practice is "unfair" under the California Unfair Competition Law if the reasons, justifications and motives of the alleged

CLASS ACTION COMPLAINT

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

1    wrongdoer are outweighed by the gravity of the harm to the alleged victims. A

2    business act or practice is "fraudulent" under the UCL if it is likely to deceive

3    members of the consuming public. A business act or practice is "unlawful" under

4    the UCL if it violates any other law or regulation.

5         58.    The conduct complained of herein, including but not limited to

6    business acts and practices, violates Business and Professions Code section 17200.

7    The business acts and practices alleged herein display Defendants' committed,

8    common, continuous, and continuing course of conduct constituting unfair

9    competition by unfair, unlawful, and-or fraudulent business acts and practices

10   within the meaning of section 17200, et seq. as described herein, and are unfair to

11   consumers in the State of California within the meaning of section 17200.

12        59.    Each named Plaintiff has suffered actual injury in the form of at least

13   one type of injury described herein, losing money or property as a result of unfair

14   competition as described above, including Defendants' unlawful, unfair, or

15   fraudulent business acts and practices.

16        60.    By such violations of the UCL, Lyft, Inc. has enriched itself to the

17   detriment of drivers and prospective drivers.  Therefore the Plaintiff and Class

18   members are entitled to simple restitution of the funds obtained from them by Lyft,

19   Inc. through these unfair, fraudulent, and unlawful business acts and practices.

20        61.    The gravity of the harm to Plaintiff and Class members resulting from

21   these unfair acts and practices outweighs any conceivable justifications or motives

22   of Lyft for engaging in such deceptive acts and practices.

23        62.    By committing the acts and practices alleged herein, Defendant

24   engaged in, and continue to engage in, unfair business practices within the

25   meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and Plaintiffs and Class

26   members continue to suffer harm from these actions.  Therefore, Plaintiff and

27   Class members are entitled to injunctive relief prohibiting the continuation of such

28   business acts and practices.

63.     Plaintiffs ask the Court to order Defendants to pay restitution to Plaintiffs and the California Subclass members in the amount of their losses based on violations of the UCL, to pay attorney's fees and costs, and to enjoin Defendants from continuing to violate the UCL as alleged herein.

## COUNT II
## UNJUST ENRICHMENT
### By Plaintiff and Class Members Against Defendants

64.     Plaintiff Villaseñor herein incorporates by reference all the foregoing paragraphs as though fully set forth herein.

65.     Plaintiff Villaseñor pleads this claim in the alternative. Because of the misconduct described herein, Defendant Lyft has been unjustly enriched at the expense of Plaintiff and Class members, having received and retained payments from Lyft Riders beyond those promised in Lyft's advertising and in its other communications and agreements with its drivers.

66.     Specifically, Defendant Lyft has retained a larger portion of the passenger fare than they promised they would retain and is therefore without legal entitlement to retain those funds.  This unjust enrichment has directly benefited Defendant Lyft.  And Lyft knew or should have known that drivers would likely be deceived as to the amount of the fare and as to the driver's percentage share of the full fare.

67.     The funds obtained by Lyft from the drivers' labor without legal entitlement were used by Lyft to increase Lyft's company value as the value of the common and preferred stock of Lyft, Inc.  Therefore, the drivers are entitled to disgorgement of the increased value of Lyft stock attributable to the funds Lyft has obtained without legal entitlement.

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

CLASS ACTION COMPLAINT

68.     In the alternative, the drivers are entitled to ownership of the portion of Lyft, Inc. stock attributable to the value of the stock increased from the wrongfully obtained funds.

## COUNT III
## MISREPRESENTATION
### By Plaintiff and Class Members Against Defendants

69.     Plaintiff Villaseñor herein incorporates by reference all the foregoing paragraphs as though fully set forth herein.

70.     Defendant Lyft has engaged in Fraudulent Inducement to Employment and to Contract,  and Intentional and Negligent Misrepresentation as described above, and such misrepresentations have actually and proximately caused harm to Plaintiff and Class members.

71.     Defendant Lyft's failure to inform Plaintiff Villaseñor and similarly situated Lyft Drivers that the amount being represented to them as the full fare charged the Riders was not in fact the full fare, but rather an amount less than what the Rider was charged, was a willful and intentional misrepresentation of fact made with the intent that Plaintiff and the Class members rely on same.  Such misrepresentations fraudulently induced Plaintiff and the Class members to enter into an employment relationship with Lyft, Inc. and to contract with Lyft, initially and repeatedly.

72.     Plaintiff and the Class entered into employment and into contracts with Lyft and performed services thereunder in reliance on the representations made by Lyft that it would pay them an amount equal to the fare it charged the rider less Lyft's "Commission" percentage (20% or 25% of the fare, the applicable percentage being based on when the driver contracted with Lyft) and any applicable charges such as service fees, cancellation fees, damage fees, tolls and/or surcharges for each ride he/they successfully completed.

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

CLASS ACTION COMPLAINT

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

73.     The statements referred to herein, made by Lyft, were false; Lyft knew them to be false at the time such statements were made and intended the drivers to rely upon such statements; the drivers relied upon such statements to their detriment, accepting employment while being paid a lower level of pay than promised; and drivers were harmed by such misrepresentations and by drivers' reliance upon such misrepresentations.

74.     Thus, as a direct, proximate, and foreseeable result of misrepresentations, Plaintiff and the Class have been damaged ins an amount to be determined according to proof at the time of trial.

## COUNT IV
## CONSTRUCTIVE TRUST
### (California Civil Code §§ 2223, 2224)
### By Plaintiff and Class Members Against Defendant Lyft, Inc.

75.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs here, as though fully set forth in this Fourth Cause of Action.

76.     Defendant Lyft, Inc. has wrongfully detained money, property, and property value that rightfully belong to Plaintiff and Class members.  Therefore, Defendant Lyft, Inc. is an involuntary trustee of such property for the benefit of the owner.

77.     Furthermore, Lyft, Inc. has obtained money rightfully belonging to Plaintiff and Class members by fraud, accident, mistake, and undue influence, and by the violation of a trust by a fiduciary, and other wrongful acts, and is without other and better rights to such money, and is therefore an involuntary trustee of the money gained, for the benefit of Plaintiff and Class members.

78.     In addition, Lyft, Inc. has invested such money in the company, resulting in an increase in the wealth of the company as measured by its stock price and market value.  This increased stock price and company value also rightfully

CLASS ACTION COMPLAINT

belongs to Plaintiff and Class members, and Lyft, Inc. is without other and better rights to such increased company value, and is therefore an involuntary trustee of the increased company value, for the benefit of Plaintiff and Class members.

79.     Therefore, Plaintiff asks the Court to declare that Lyft, Inc. is an involuntary trustee of said money gained and of said increased company value and stock and impose a constructive trust over said money and over Lyft, Inc. common stock in an amount sufficient to return to Plaintiff and Class members common stock in the amount that Plaintiff and Class members would own had they invested said funds in Lyft, Inc. common stock at the time they earned it.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Villaseñor, individually and on behalf of the proposed Class and Subclass, requests relief against the Defendant as follows:

a. Certification of the Class;

b. Designation of Plaintiff Villaseñor as Representative of the Class;

c. Designation of Plaintiff's counsel of record as Class Counsel for the Class;

d. An award of damages, in an amount to be determined at trial;

e. Restitution in an amount to be determined at trial;

f. Disgorgement of unjust enrichment in an amount to be determined at trial;

g. The imposition of a Constructive Trust over funds rightfully belonging to Plaintiff and Class members but wrongfully retained by Lyft, Inc. Traced to include property and increased property value obtained by investment and re-investment of such funds;

h. An appropriate service payment to Plaintiff for his service as Class Representative;

i. Reasonable attorneys' fees and costs of this action, including expert fees;

j. Pre-judgment and post-judgment interest as provided by law;

k. Such other and further relief that the Court may deem just and proper.

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

CLASS ACTION COMPLAINT

1

2  Dated: May 9, 2018                   Respectfully submitted,

3
                                        PELUSO LAW GROUP, PC
4

5

6

7  By:_____

8                      LARRY A. PELUSO

9

10

11

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1

2                                    **JURY DEMAND**

3          Plaintiff, on behalf of himself and the proposed Class, demand a trial by jury

4    on all claims so triable.

5

6    Dated: May 9, 2018                    Respectfully submitted,

7

8                                          PELUSO LAW GROUP, PC

9

10

11

12    By:_____

13          LARRY A. PELUSO

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PELUSO LAW GROUP, PC
14435-C Big Basin Way #289
Saratoga, California 95070